IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MARVIN McKISSIC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No.  3:05-cv-00728-MHT-CSC |
| RANDOLPH COUNTY JAIL, et al., | ) ) ) |
| Defendants. | ) |

## DEFENDANTS' SPECIAL REPORT

COME NOW Shirley Johnson, Craig Davidson, Vernon Haynes, and Jimmy Wilkes, Jr., Defendants in the above-styled cause, and submit their Special Report to the Court as follows:

### INTRODUCTION

Plaintiff in this action, Marvin McKissic, hereinafter "Plaintiff," filed his Complaint against the Randolph County Detention Facility Administrator, Shirley Johnson, Craig Davidson, Vernon Haynes, and Jimmy Wilkes, Jr. in the United States District Court for the Middle District of Alabama on August 3, 2005.  On August 5, 2005, this Court entered an Order instructing Defendants to file a Special Report addressing Plaintiff's claims.  On September 15, 2005, the Randolph County Detention Facility was dismissed pursuant to 28 U.S.C. 1915(e)(2)(b)(i).  On October 19, 2005, Plaintiff moved to amend his Complaint.  On October 24, 2005, the Court, granted the Plaintiff leave to file an Amendment to his Complaint and granted Defendants until November 18, 2005, to file their Special Report and Answer.

The Plaintiff was arrested on May 12, 2005, on two warrants for Failure to Appear. (Exhibit A, Inmate File of Marvin McKissic, "Inmate File," Arrest Report dated May 12, 2005.)

1

He was booked into the Randolph County Detention Facility that same day and is currently incarcerated there. (Exhibit B, Inmate File, Jail Booking Sheet dated May 12, 2005.)

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that he was denied medical treatment; that he got in a fight with a state inmate and hit his head; that the fight was not reported to the Captain; that he was disciplined as a result of this fight; that the showers leak to the kitchen; that the fire alarms have been pulled out leaving exposed wiring; that the Jail is overcrowded; that there is no way for Jailers to know what is happening with the inmates; and that he was placed back in the same cell block with the inmate that he had gotten in a fight with despite requesting to not be housed with that inmate. (Plaintiff's Complaint and Plaintiff's Amendment to Complaint.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. (Exhibit C, Affidavit of Shirley Johnson,[1] "Johnson aff." ¶ 4; Exhibit D, Affidavit of Craig Davidson[2], "Davidson aff." ¶ 4; Exhibit E, Affidavit of Vernon Haynes[3], "Haynes aff." ¶ 4; Exhibit F, Affidavit of Jimmy Wilkes, Jr.[4], "Wilkes aff." ¶ 4.) Defendants raise the defenses of Eleventh

---

[1] Shirley Johnson is the Jail Administrator of the Randolph County, Alabama Detention Facility, and has served as Jail Administrator since 1999. Johnson began her employment with the Randolph County Sheriff's Department in 1989 as a matron. She is a graduate of Jail Management School. (Johnson aff. ¶ 2.)

[2] Craig Davidson is the Assistant Jail Administrator of the Randolph County, Alabama, Jail. He has served the Randolph County Sheriff's Department for over three years as a Captain. Before that Davidson served as a Sergeant at the Chambers County Sheriff's Department for three years and as a jailer for two months. He is a graduate of Jail Management School. (Davidson aff. ¶ 2.)

[3] Vernon Haynes has been employed as a jailer at the Randolph County, Alabama, Jail for almost two years.

[4] Jimmy Wilkes, Jr. has been employed at the Randolph County, Alabama, Jail for a total of nineteen (19) months. Before that Wilkes was with the Chambers County Sheriff's Department for one and one half years. He also served as a

Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.  FACTS

### A.  Medical Claims

It is the policy and procedure of the Randolph County Detention Facility to provide prompt medical attention to each and every inmate upon their request. A request may be submitted via a written request form or made verbally to a correctional officer. The inmate is then put on the list to see the Nurse Practitioner, or, in emergency situations, taken immediately to the Wedowee Hospital across the street from the Jail. Inmates can also be seen, at least weekly, by the jail Nurse Practitioner. (Ex. C, Johnson aff. ¶ 5; Ex. D, Davidson aff. ¶ 5.) The health and medical treatment of inmates at the Randolph County Detention Facility is an important matter. Every inmate request for medical attention is treated seriously by the staff. Upon receipt of an inmate request for medical care, established procedures are followed to assure that a qualified health professional evaluates the inmate in a timely manner. (Ex. C, Johnson aff. ¶ 6; Ex. D, Davidson aff. ¶ 6.) The Randolph County Sheriff's Department operates the Randolph County Detention Facility pursuant to sound policies and procedures which ensure that the rights of all inmates incarcerated therein are respected. Members of the jail staff are trained both in house and at certified training programs and academies regarding all aspects of their jobs, including the administration of medical care to inmates. (Ex. C, Johnson aff. ¶ 7; Ex. D,

---

Security Guard for Lexus/Nexus for ten months. He is a graduate of Jail Management School. In addition, the Defendants are attaching an unsigned affidavit of Mr. Wilkes, and request this Court grant unto them leave to substitute the unsigned affidavit with the executed affidavit upon receipt of the same. The attached Affidavit of Jimmy Wilkes, Jr., is an unexecuted copy, the Defendants reserve the right to supplement this Special Report with the executed affidavit once it is received.

Davidson aff. ¶ 7.) It is the policy of the Randolph County Sheriff's Department that all inmates confined in the Randolph County Detention Facility be entitled to a level of health care comparable to that available to the citizens in the surrounding community in order that the inmates' physical and emotional well-being may be maintained. All medical care rendered to inmates in the Randolph County Detention Facility is delivered under the direction of a licensed health care practitioner. (Ex. C, Johnson aff. ¶ 8; Ex. D, Davidson aff. ¶ 8.) The Jailers at the Randolph County Facility have access to over-the-counter medication such as Tylenol, Ibuprofen, and Pepto-Bismol to distribute upon permission from a doctor, as needed to inmates. (Ex. C, Johnson aff. ¶ 9; Ex. D, Davidson aff. ¶ 9.)

The Defendants have never denied necessary medical care or treatment to Plaintiff or any other inmate, nor have they ever authorized or allowed anyone to do so. (Ex. C, Johnson aff. ¶ 10; Ex. D, Davidson aff. ¶ 10; Ex. E, Haynes aff. ¶ 5; Ex. F, Wilkes aff. ¶ 5.) Plaintiff did not ask Vernon Haynes or Jimmy Wilkes, Jr., for medical care. (Ex. E, Haynes aff. ¶ 6; Ex. F, Wilkes aff. ¶ 6.) Every time Plaintiff requested medical care, he was seen by the Nurse Practitioner Ricky Daniel. (Ex. C, Johnson aff. ¶ 11; Ex. D, Davidson aff. ¶ 11; Exhibit G, Medical Records from the Wedowee Hospital Clinic, "Medical Records.") In fact, the medical records show that Plaintiff was examined by a medical doctor in July 2005 because his head hurt. (Ex. G, Medical Records.)

      B.    **Conditions of Confinement Claims**

It is the policy and procedure of the Randolph County Detention Facility to provide the inmates housed therein a clean and sanitary environment that meets and exceeds the standards required by law. Per the Randolph County Detention Facility Inmate Rules and Regulations, inmates must maintain both their personal spaces and Jail common areas in a neat and orderly

manner. (Ex. C, Johnson aff. ¶ 12; Ex. D, Davidson aff. ¶ 12.) The Randolph County Detention Facility has in place a systematic cleaning program. Inmates are provided cleaning materials to use for their maintenance of personal and common areas. (Ex. C, Johnson aff. ¶ 13; Ex. D, Davidson aff. ¶ 13.) The food preparation and serving areas are cleaned daily and are inspected regularly by state and local health agencies. (Ex. C, Johnson aff. ¶ 14; Ex. D, Davidson aff. ¶ 14.) It is the policy and procedure of the Randolph County Detention Facility to maintain a jail that is safe both for its employees and inhabitants. To that end, the Randolph County Detention Facility fire detection and suppression systems are inspected annually to assure that each is in proper working order throughout the facility. (Ex. C, Johnson aff. ¶ 15; Ex. D, Davidson aff. ¶ 15.) The Detention Facility is subject to inspection by numerous State agencies responsible for guaranteeing that the Detention Facility structures comply with applicable codes and regulations. When a fire or general safety issue arises – whether through an Inmate Request, an Inmate Grievance or Jail staff observation – the concern is addressed promptly and appropriately. (Ex. C, Johnson aff. ¶ 16; Ex. D, Davidson aff. ¶ 16.) The Jail staff is instructed in the use of portable fire extinguishers. (Ex. C, Johnson aff. ¶ 17; Ex. D, Davidson aff. ¶ 17.) An emergency fire evacuation plan is posted in the Detention Facility. The Detention Facility also features emergency exits and appropriate fire apparatus. (Ex. C, Johnson aff. ¶ 18; Ex. D, Davidson aff. ¶ 18.)

It is the policy and procedure of the Randolph County Detention Facility that inmates who violate Jail rules, regulations and/or policy – whether isolated or repeated – will be subject to appropriate discipline. (Ex. C, Johnson aff. ¶ 20; Ex. D, Davidson aff. ¶ 20.) Defendants did not discipline Plaintiff as a result of any fight that allegedly occurred. (Johnson aff. ¶ 21; Davidson aff. ¶ 21; Wilkes aff. ¶ 7; Haynes aff. ¶ 8.)

### C.   Failure to Protect Claims

The Randolph County Detention Facility is equipped with cameras throughout the building. There is a jailer in the dispatch room monitoring the cameras 24 hours a day. There is also another monitor in the multipurpose room of the jail. Further, jailers in the Randolph County Detention Facility make rounds throughout the jail in 15-30 minute intervals. (Ex. C, Johnson aff. ¶ 19; Ex. D, Davidson aff. ¶ 19.)

Jimmy Wilkes, Jr. came in to work one day, and the Plaintiff told him that he had gotten into a fight an hour or two earlier. Wilkes does not recall who Plaintiff said was in the fight with him. Wilkes asked the Plaintiff if he was hurt, and he said no. Wilkes told the Plaintiff that he could report the incident to the Captain when the Captain came in at 8 a.m. (Wilkes aff. ¶ 7.) Shirley Johnson and Craig Davidson had no knowledge that Plaintiff was in a fight or was hurt until days after it allegedly happened. In fact, they did not know who Plaintiff got in a fight with until after they received this lawsuit. (Johnson aff. ¶ 21; Davidson aff. ¶ 21.) Plaintiff did not ask Defendants to separate him from any other inmate. (Johnson aff. ¶ 21; Davidson aff. ¶ 21; Wilkes aff. ¶ 7; Haynes aff. ¶ 7.) James Johnson, the inmate referred to by Plaintiff is a County inmate, not a state inmate. (Wilkes aff. ¶ 9.)

### D.   Plaintiff's Noncompliance with the Grievance Procedures at the Randolph County Jail.

Plaintiff has not complied with the grievance procedures of the Randolph County Jail. (Ex. C, Johnson aff. ¶ 22; Ex. D, Davidson aff. ¶ 22.) Defendants never received any grievance from the Plaintiff concerning any of the allegations made the basis of his Complaint. (Ex. C, Johnson aff. ¶ 22; Ex. D, Davidson aff. ¶ 22; Ex. E, Haynes aff. ¶ 9; Ex. F, Wilkes aff. ¶ 10.) As there is a grievance procedure in the Randolph County Jail, it could have been used by the Plaintiff to make known any questions or concerns he had regarding his incarceration. Neither Administrator

6

Johnson nor Captain Davidson ever received any such grievance, and to the best of their knowledge, no grievance was ever written by the Plaintiff concerning these matters. Had any request form or grievance been submitted by the Plaintiff, it would have been placed in his inmate file per Jail policy. However, Plaintiff's inmate file is devoid of any such grievance. (Ex. C, Johnson aff. ¶ 22; Ex. D, Davidson aff. ¶ 22.)

II.   LAW

   A.   **All claims by Plaintiff against Defendants in their official capacity must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C.A. § 1983.**

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacity claim must fail because 42 U.S.C.A. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C.A. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Any claim against Defendants in their

7

official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacity fail to state a claim upon which relief can be granted. <u>Id.</u>; <u>Carr v. City of Florence, Ala.</u>, 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

> **B.    Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**
>
>> **1.    Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. First, the Plaintiff has not exhausted the grievance procedures provided at the Randolph County Detention Facility. Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment. See <u>Brown v. Tombs</u>, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Despite the existence of internal grievance procedures at the Randolph County Detention Facility, no grievance was filed by the Plaintiff in regards to the allegations made the basis of his Complaint.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to <u>Ala. Code</u> § 41-9-60. The Sheriff of Randolph County, as are his alter egos, is a state officer and therefore would be entitled to sovereign immunity. See <u>Lancaster v. Monroe County</u>, 116 F.3d 1419, 1429 (11th Cir. 1998). Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies).

  **2. Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . . In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002). Because Plaintiff has not made a showing of physical injury that is greater than de minimis, his complaint is due to be dismissed.

  **C. Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as jail officials of Randolph County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their duties. See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second

inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the Plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Board of Education, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government

agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

The evidence clearly shows that Defendants have done nothing to cross any bright line of clearly established constitutional law. Therefore, they are entitled to qualified immunity.

### 1.     Medical Claims

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

In the instant case, Plaintiff has not established the existence of any serious medical need. Further, the evidence shows that Plaintiff was given medical attention by a licensed medical care provider each time he requested it.

An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, the Defendants do not have any kind of medical education, training or experience. They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[5] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's

---

[5] The medical director was a trained and licensed nurse. 302 F.3d at 846.

12

diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

Similarly, in the instant case Defendants are not medical professionals, nor are they mental health providers. Plaintiff was evaluated and treated by a medical professional at the Wedowee Hospital Clinic. Therefore, Defendants acted within constitutional parameters, and were in no way deliberately indifferent to any serious medical need of the Plaintiff. Therefore, Defendants did not commit a constitutional violation. However, even assuming *arguendo* a constitutional violation, Defendants did not violate any clearly established law that gave them fair warning that their conduction was unlawful, and thus, they are entitled to qualified immunity from Plaintiff's claims.

### 2.     Conditions of Confinement Claims

In order to establish a conditions of confinement claim Plaintiff "must prove three elements:  (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (first element); Wilson v. Seiter, [502] U.S. [294, 303], 111 S. Ct. 2321, 2327, 115 L.Ed.2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90

13

(11th Cir. 1982) (third element). Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. Wilson v. Seiter, 502 U.S. at 290.

In terms of the subjective component, "[t]o be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." LaMarca v. Turner, 995 F.2d at 1535. "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" Id. (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986). There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions. Id. at 1979-80. No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996). Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives. LaMarca, 995 F.2d at 1536. In addition, Plaintiff must also show that Defendants had some personal involvement in the alleged deprivation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). Plaintiff cannot show that Defendants have been deliberately indifferent to conditions at the Randolph County Detention Facility. Deliberate indifference to an inmate's health or safety can only be shown if the defendants know

14

that the inmate faces a substantial risk of serious harm and disregard the risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825 (1994). Plaintiff has failed to allege or offer any evidence sufficient to sustain a claim that any overcrowding constituted cruel and unusual punishment.

In this case, none of the conditions of which Plaintiff complaints constitutes an excessive risk to his health or safety. Plaintiff has not shown how he has been injured as a result of any of his allegations. Further, Plaintiff never filed a grievance concerning his allegations, and there is no other evidence showing that the Defendants knew of or disregarded any alleged risk. It is clear from the evidence that Defendants acted according to established lawful policies and procedures with regard to Plaintiff. Based on the foregoing, it is clear that Defendants have not violated Plaintiff's constitutional rights. Further, Plaintiff cannot show that clearly established law provided Defendants with fair warning that their conduct was unlawful. Therefore, Defendants are entitled to qualified immunity.

### 3. Failure to Protect Claim

"[N]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer v. Brennan, 511 U.S. 825, (U.S. 1994). A jail officer only violates the Eighth Amendment when two conditions are met: (1) the inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm" and (2) "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 834 and 837. Where the inmate had not requested protection from the other inmate involved and where the officer had no knowledge of a threat prior to the injury, a plaintiff's failure to protect claim must fail. Carter v. Galloway, 352 F.3d

1346, 1350-1351 (11th Cir. 2003).  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  Farmer v. Brennan, 511 U.S. 825, 838 (U.S. 1994).

In the instant case, Plaintiff has not shown that he was subjected to a substantial risk of serious harm, nor can he show that Defendants were aware of any such risk.  Defendants were not aware of any alleged fight until after it had occurred, and Plaintiff did not ask Defendants to separate him from any other inmate. Because Plaintiff has not shown that Defendants were deliberately indifferent to a substantial risk of serious harm, his claim for failure to protect must fail.

**D.     Plaintiff has failed to allege personal involvement as required by 42 U.S.C. § 1983.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation.  Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995).  The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury.  Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

The Plaintiff has failed to allege that the Defendants were in any way personally involved in any alleged violation of Plaintiff's constitutional rights concerning any of the conditions of his confinement.  Plaintiff has offered no allegation demonstrating that the Defendants were in any way involved in the actions he claims were constitutionally infirm.  There are absolutely no facts – in fact, the Complaint is completely devoid of any specific claim against specific Defendants-- to show that the Defendants personally participated in the claims made the basis of the Plaintiff's Complaint,

nor does the Plaintiff allege specifically how the Defendants violated his constitutional rights. As such, Plaintiff's claims are due to be dismissed.

To the extent that Plaintiff's claim against Shirley Johnson and Craig Davidson is an attempt to hold them liable under a *respondeat superior* theory, his claim must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996).

There are absolutely no facts that show a causal connection between any action of any Defendant and the alleged constitutional violation. Therefore, Plaintiff's claims are due to be dismissed.

### E.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal

Practice and Procedure § 2529, p. 299.[6]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff Marvin McKissic in the Complaint.  Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this the 18th day of November, 2005.

        s/ C. RICHARD HILL, JR. Bar No. HIL045

        Attorney for Defendants

        WEBB & ELEY, P.C.
        7475 Halcyon Pointe Drive (36117)
        Post Office Box 240909
        Montgomery, Alabama  36124
        Telephone:  (334) 262-1850
        Fax:  (334) 262-1889
        E-mail:  rhill@webbeley.com

---

[6] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**CERTIFICATE OF SERVICE**

  I hereby certify that on this the 18th day of November, 2005, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

    Marvin McKissic
    Randolph County Jail
    P.O. Box 347
    Wedowee, AL 36278

        **s/C. Richard Hill, Jr.**
        OF COUNSEL